IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID EARL LUTZ,
      Petitioner,

vs.                          Case No.:  3:11cv334/LAC/EMT

JOHN PALMER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 14, 15, 28).  Petitioner filed a reply (doc. 35).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 14, 15).[1]  Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2002-CF-1249, with four counts of lewd or lascivious molestation (Ex.

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (docs. 14, 15). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

A at 1).  Counts 1, 2, and 4 involved the same victim (R.P.), and Count 3 involved another victim (J.S.) (*id.*). Count 3 was severed from the other counts (Ex. B at 188–95).  Petitioner went to trial on the remaining three counts on March 23–24, 2004, and the jury found him guilty on all three counts (renumbered Counts 1, 2, and 3) (Ex. A at 85–86, Exs. F, G, H).  On May 3, 2004, the trial court dismissed Count 3 upon agreement of the parties (Ex. A at 100, Ex. B at 243).  Petitioner was adjudicated guilty and sentenced to twenty-five years of imprisonment on Count 1, with pre-sentence credit of 497 days, and a consecutive term of thirty (30) years of probation on Count 2 (Ex. A at 105–10, Ex. B at 242–75).  The State announced a nolle prosequi of the severed count (Ex. B at 270).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D04-2062.  On August 12, 2005, the First DCA affirmed the judgment per curiam without written opinion (Ex. L).  Lutz v. State, 908 So. 2d 1061 (Fla. 1st DCA 2005) (Table). Petitioner sought certiorari review by the Florida Supreme Court and the United States Supreme Court (Exs. M-1, M-2, N-1).  On March 27, 2006, the United States Supreme Court denied the petition for certiorari (Ex. N-2).

On February 28, 2007, Petitioner filed a habeas petition in the First DCA alleging ineffective assistance of appellate counsel, Case No. 1D07-1111 (Ex. O-1).  The First DCA denied the petition on the merits on March 29, 2007 (Ex. O-2).  Lutz v. State, 956 So. 2d 492 (Fla. 1st DCA 2007). Petitioner's motion for rehearing was denied May 30, 2007 (Ex. O-2).

On June 18, 2007, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Civil Procedure, which he subsequently amended (Ex. P at 1–20, 41–80, 90–101).  On October 27, 2010, the state circuit court summarily denied the motion (*id.* at 102–17). Petitioner appealed the decision to the First DCA, Case No. 1D10-6584 (Ex. Q).  The First DCA affirmed the decision per curiam without written opinion on May 10, 2011, with the mandate issuing July 19, 2011 (Exs. S, V).  Lutz v. State, 64 So. 3d 1265 (Fla. 1st DCA 2011) (Table).

Petitioner filed his federal habeas petition on July 6, 2011 (doc. 1).  The court previously determined the petition was timely (*see* docs. 23, 27).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

Ground One:  "Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when counsel failed to move for dismissal of charges when the State failed to prove that crime occurred within reasonable time as specified in the charging document."

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner contends defense counsel was ineffective for failing to seek dismissal of the charges on the ground that the victim was unable to testify with certainty that the two incidents of sexual molestation (as previously noted, Petitioner was adjudicated guilty of only two counts) occurred on or between June 1 and June 29, 2002, as alleged in the amended information (doc. 1 at 5–9).[7]  He also contends defense counsel was ineffective for failing to impeach the victim's trial testimony on the issue of the dates of the molestation (*id.*).

Petitioner states the original information alleged that the molestation occurred from July 5 to July 9, 2002 (doc. 1 at 5–9).  He states the victim told a detective on October 14, 2002, that the molestation occurred after July 4, 2002; but at her deposition on March 18, 2003, she stated the first incident occurred prior to a friend's slumber party, without specifying a date (*id.*).  Petitioner states that the victim's grandmother, Dana Pryor, testified at her deposition (the same date as the victim's) that the friend's slumber party occurred on June 28, 2002 (*id.*).

Petitioner states the amended information alleged the molestation occurred between June 1 and June 29, 2002 (doc. 1 at 5–9).  He contends that the State's changing the dates of the offense conduct hampered his ability to prepare an alibi defense (*id.*).  He additionally contends the trial evidence was insufficient to prove that the two acts of molestation occurred within the time alleged in the amended information (*id.*).  He argues the victim's trial testimony failed to establish a date or month of the molestation (*id.*).  He further argues Dana Pryor's trial testimony, that the victim knew Petitioner for a two-week period from the third week of June of 2002 to the first week of July of 2002, and that the slumber party occurred on June 28, 2002, was insufficient to prove when the molestation occurred, because the victim is deemed the most reliable source of this information, pursuant to Florida Statutes § 90.604 (*id.*).  Petitioner also argues defense counsel was ineffective for failing to impeach the victim's trial testimony with her prior inconsistent statements as to the dates the molestation occurred (*id.*).  Petitioner states he raised both aspects of this claim in Ground Seven of his Rule 3.850 motion (*id.* at 9).

---

[7] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

In his answer, Respondent addresses only the aspect of Petitioner's claim concerning defense counsel's failure to move to dismiss the charges on the ground that there was insufficient evidence that the acts of molestation occurred within the time frame alleged in the amended information (doc. 28 at 2–3).  As to that claim, Respondent contends Petitioner raised it in his Rule 3.850 motion as Ground Seven, and the state court adjudicated the merits (*id.* at 2–3).  Respondent contends the state court's adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 1–3).

Petitioner contends Respondent's failure to assert an exhaustion defense as to the other aspect of his claim, that is, counsel's failure to impeach the victim's trial testimony regarding the dates of the molestation with prior statements in her interview with police and her deposition, constitutes a waiver of the defense (doc. 35 at 1–2).  Petitioner argues he is entitled to relief on both aspects of his claim (*id.* at 1–4).

Petitioner's argument that Respondent waived the exhaustion defense is unconvincing. Section 2254 provides, "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."  28 U.S.C.A. § 2254(b)(3).  In this case, counsel for the State did not expressly waive the exhaustion requirement as to the aspect of Petitioner's claim alleging ineffective assistance of counsel based upon counsel's failure to impeach the victim's trial testimony regarding the dates of the molestation.  Therefore, the exhaustion defense is not waived as to this claim.

Furthermore, the record demonstrates that Petitioner did not present this claim to the state courts.  Though Petitioner raised twenty claims in his amended Rule 3.850 motion, which is the proper state vehicle for presenting claims of ineffective assistance of trial counsel, he did not argue that trial counsel was ineffective for failing to impeach the victim's trial testimony regarding the dates of the  molestation with her prior statements to police and her deposition testimony (*see* Ex. P at 41–80).  Further, any attempt to return to state court to present the claim would be futile, because another Rule 3.850 motion would be subject to dismissal as successive.  *See* Fla. R. Crim. P. 3.850(f).  Therefore, the claim is procedurally defaulted.  Petitioner has not shown cause for the default, nor has he proffered new, reliable evidence showing he is factually innocent of the crimes. Therefore, he is not entitled to federal review of his ineffective assistance of counsel claim based

upon counsel's alleged failure to impeach the victim's trial testimony regarding the dates of the molestation with her prior statements to police and her deposition testimony.  The court will thus review only Petitioner's claim that counsel was ineffective for failing to seek dismissal of the charges on the ground that there was insufficient evidence of the date of the molestations.

           1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310,

1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

As previously discussed, Petitioner raised this claim as Ground Seven in his Rule 3.850 motion (Ex. P at 55–56).  In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the <u>Strickland</u> standard as the applicable legal standard (*id.* at 103).  The court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to argue for dismissal when the State failed to prove the offenses occurred on or about the dates listed in the information.  This claim is refuted by the record.  First, evidence was presented that the offenses occurred between the first week of June, when R.P. [the victim] first met Defendant, and June 29, the morning after the slumber party.  (Exhibit E, pp. 245–246).  Defendant testified he left the area on June 30.  (Exhibit E, pp. 424–425).  Moreover, upon counsel's motion for judgment of acquittal, the trial court ruled the State presented evidence sufficient to show the offenses occurred as charged and to submit the matter to the jury.  (Ex. E, pp. 272–75).

(Ex. P at 109–10).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. S).

The state court record shows that the initial information was filed January 9, 2003, alleging that the offense conduct underlying the charges occurred between July 5–9, 2002 (Ex. A at 1).  Defense counsel filed a motion for a statement of particulars, seeking an order requiring the State to furnish the time, place, location and manner of each act of molestation (*id.* at 12).  The State then filed an amended information, on March 21, 2003, alleging the offense conduct occurred between June 1, 2002 and June 29, 2002 (*id.* at 26–27).  The trial court denied the motion for statement of particulars (*id.* at 33).  Petitioner's trial occurred March 23–24, 2004 (Exs. F, G, H).

At trial, the victim's grandmother and legal guardian, Dana Pryor, testified that the victim began her association with Petitioner in the middle of June of 2002 and last had contact with him on June 29, 2002 (Ex. G at 245–47).  Ms. Pryor testified that the victim met a friend, Jenna S., through Petitioner during that period, and the girls spent time together at Petitioner's trailer and Ms. Pryor's trailer during that time (*id.* at 245).  Ms. Pryor testified the victim attended Jenna's slumber party on June 28, and Petitioner walked her home the next day (*id.* at 246–47).

The victim testified Petitioner lived in the trailer next to her grandmother's, and Jenna lived with him (Ex. F at 157–59).[8]  She testified that on the morning after the Jenna's slumber party at Petitioner's trailer, Petitioner took pictures of her naked and then pulled his pants down, and she touched his penis with her hands (*id.* at 161–64, 180–89).  She testified this was the last time she saw Petitioner (*id.* at 191–92).  The victim testified that on another occasion at Petitioner's trailer, he "kissed me on the lips and in the mouth" and touched her vagina with his tongue (*id.* at 156–57).

At the close of the State's case, defense counsel moved for a judgment of acquittal of all counts, on the ground that although there was some testimony of "an occurrence," there were "significant gaps" in the victim's ability to recollect the events, and the evidence was "very thin," inconclusive, and insufficient to show a prima facie case (Ex. G at 272–74).  The court denied the motion on the ground that the State established a prima facie case, and whether Petitioner was guilty was a jury question (*id.* at 275).

When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, federal habeas courts should not "second guess" them on such matters because it is a fundamental principle that state courts are the final arbiters of state law.  Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005).  Here, the state court determined there was sufficient evidence to submit the case to the jury on both counts.  Because this federal court will not "second guess" the Florida state court's conclusion that the evidence was sufficient to submit to the jury, Petitioner cannot demonstrate that his counsel was deficient for failing to seek dismissal of the charges on the ground that there was insufficient evidence of the date each molestation occurred.  A lawyer cannot be deficient for failing to raise a meritless claim.  *See* Freeman v. Attorney Gen., 536 F.3d 1225, 1233 (11th Cir. 2008).

Further, Petitioner failed to show that defense counsel had a meritorious basis to seek dismissal of the charges on the ground that amendment of the information to reflect the dates of the

---

[8] Jenna's mother, Leah Miller, testified that she, her boyfriend (Bernard) and Jenna lived with Petitioner in the trailer for "a couple of weeks" prior to July 9, 2002 (Ex. G at 105–10).

offenses as between June 1, 2002 and June 29, 2002, failed to give him sufficient notice to prepare an alibi defense. The amended information was filed March 21, 2003, over a year prior to trial (*see* Ex. A at 26–27). The defense thus had ample time to conduct discovery and prepare an alibi defense. Therefore, defense counsel would have had no meritorious basis to seek dismissal of the charges on this ground.

Petitioner failed to establish that the state court's rejection of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to relief on Ground One.

>    B.    Ground Two: "Petitioner's right to due process and a fair trial was violated when the trial court failed to conduct a proper analysis under Rule 403."

Petitioner contends a pre-trial status conference was held December 11, 2003, during which the trial court considered whether an evidentiary hearing was necessary to determine the admissibility of evidence of other crimes, wrongs, or acts, specifically, testimony from Jenna S. and her parents regarding an incident where Petitioner put his hands down the back of Jenna's pants and touched her buttocks underneath her underwear near the time of his molestation of R.P. (the conduct involving Jenna was the underlying offense conduct of the severed count) (doc. 1 at 10–11).[9] Petitioner contends the trial court erred in failing to consider and weigh the probative value of the testimony against the potential for unfair prejudice, as required by Florida Statutes § 90.403 (*id.*). Petitioner contends the trial court's failure to conduct a balancing test under section 90.403 violated his constitutional rights to due process (*id.* at 11). Petitioner asserts he raised this issue on direct appeal (*id.* at 12). He additionally contends he raised it in Grounds 8 and 18 of his Rule 3.850 motion, but the postconviction court held that they were procedurally barred (*id.*).

Respondent admits Petitioner challenged the trial court's admission of the "similar fact" evidence on direct appeal (doc. 28 at 4–5). Respondent contends this claim raises, for the most part, an issue of state law not cognizable in federal habeas (*id.* at 5). Respondent further contends there is no clearly established federal law holding that the admission of such "similar fact" evidence

---

[9] Jenna S. testified this incident occurred the night before Petitioner left to go overseas (Ex. G at 204). Petitioner testified he left Florida for Denver on June 30, returned on July 4, and then left to go overseas for a work assignment on July 8, 2002, and did not return until December 23, 2002 (Ex. H at 407, 410–11, 425).

renders a trial fundamentally unfair; to the contrary, the use of propensity evidence in child molestation cases is relaxed under federal law, specifically, Rule 414(a) of the Federal Rules of Evidence (*id.* at 5–6). Respondent contends the trial court's and the First DCA's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

The record shows that at the hearing on December 11, 2003, the trial court made the following ruling regarding the admissibility of the "similar fact" evidence:

> THE COURT:  . . . The Court has considered [§ 90.]404(2)(b) which states as follows:  In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

> Pursuant to the findings of the Court based upon the judicially noted criteria, or judicially noted material [the probable cause affidavits underlying the charges], which I have delineated for the record, I find that under Rule 403, the information which, or the evidence which the State intends to introduce is probative and is relevant, and is, therefore, relevant for purposes of the consideration by a jury.

> I further find that this Court, that there is a controlling authority from the Second District Court of Appeals, McLean versus State, . . . which has been considered and relied upon by this Court in making this determination.

> Moreover, the Court has carefully considered the Supreme Court *per curium* [sic] opinion of July 11, 2002, wherein 404(2)(b) was promulgated as a rule of evidence for consideration, application, and use by trial courts within the State of Florida.

> Based on the foregoing, and based on the State's determination that an evidentiary hearing was not required, this Court is not going to go forward with an evidentiary hearing under the traditional *Williams* Rule criteria, insofar as the allegations of the two young ladies are on all fours with the rule.
> . . . .

> MR. ROLLO [defense counsel]: . . . And if you would just go ahead and give some thought on your analysis under 403 and make that a part of the record, if you would, where you find that it's probative.  And, you know, there are other criteria under 403, Your Honor, about confusion of issue and danger—

> THE COURT: . . . This Court finds that both of these young ladies, based on the Probable Cause Affidavit and the Information filed, were under the age of 16.

> That they were alleged victims of sexual abuse by the defendant as defined by 800.04.

> That there is proximity in time.

> The identity of the defendant is by all counts not an issue.

> And based on the foregoing this Court finds it is probative and relevant, and that the prejudicial impact does not outweigh the probative value.

(Ex. D at 303–06).

On direct appeal, Petitioner challenged the trial court's admission of the similar fact evidence, on the ground that § 90.404(2)(b) was unconstitutional on its face and as applied, and its prejudicial impact outweighed its probative value (Ex. I).  The First DCA affirmed the conviction without written opinion (Ex. L).

Initially, Petitioner's contention that the trial court failed to balance the probative value of the evidence against its prejudicial effect, as required by Florida Statutes § 90.403, is refuted by the record.  The trial court clearly conducted the balancing test and determined that the probative value was not substantially outweighed by danger of the unfair prejudice.  Further, admission of evidence of Petitioner's other act of child molestation was proper under § 90.404(2)(b).

Additionally, Petitioner has not cited any Supreme Court case holding that the admission of evidence of Petitioner's molestation of Jenna S. violated federal due process principles.  "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994), because the state court "has wide discretion in determining whether to admit evidence at trial, . . . ." Lynd v. Terry, 470 F.3d 1308, 1314 (11th Cir. 2006); *see also* Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections).  However, where the petitioner claims that the state court's evidentiary ruling deprived him of due process, the habeas court asks only whether the error was of such magnitude as to deny the petitioner his right to a fair trial, that is, whether the error "was material

as regards a critical, highly significant factor."   Alderman, 22 F.3d at 1555; *see also* Kight v. Singletary, 50 F.3d 1539, 1546 (11th Cir. 1995) (state court evidentiary rulings reviewed only to determine whether error was of such magnitude as to deny petitioner right to fair trial).

The Eleventh Circuit reviewed a claim similar to the claim presented here in Tejada v. Dugger, 941 F.2d 1551, 1561 (11th Cir. 1991).  In Tejada, the petitioner claimed that the admission of Williams Rule evidence, specifically, testimony that the petitioner had once put a pillowcase over his girlfriend's head, tied her up, and threatened to kill her, rendered his trial fundamentally unfair because it only served the purpose of convincing the jury that he had a propensity to commit violent crimes.  *Id.*  The Eleventh Circuit expressed no opinion on the propriety of the trial court's admission of the evidence, holding that regardless of that question, the admission of the evidence did not deprive the petitioner of a fundamentally fair trial.  *Id.*  The court based this conclusion upon the determination that the challenged evidence was not "material" to the conviction "in the sense of a crucial, critical, highly selective factor" because the State presented far more powerful evidence of his guilt through other testimony.  *Id.* (citation omitted).

Since Tejada, the legal landscape has changed with the passage of the AEDPA.  As previously discussed in the Standard of Review section of this Report, the AEDPA brought about a more deferential standard for habeas review of state court decisions under § 2254.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).  Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's constitutional claim.  *See* Panetti, 551 U.S. 930; Jones, 469 F.3d 1216 (same).

In Williams v. Taylor, the Supreme Court addressed the "clearly established law" requirement of § 2254(d)(1) before turning to the "contrary to, or an unreasonable application of," requirement.  529 U.S. 362, 379.  The Williams Court highlighted the importance of the clause immediately following the "clearly established law" requirement, "limiting the area of relevant law to that 'determined by the Supreme Court of the United States.'"  Id. at 381 (quoting 28 U.S.C. § 2254(d)(1)).  The Court then held that "[i]f this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."  Id.  In Lockyer v. Andrade, the Supreme Court subsequently held that the "clearly established law" requirement "refers to holdings, as opposed to dicta, of [the] . . . Court's decisions as of the time of the relevant state-court decision." 538 U.S. at 71 (quoting Williams, 529 U.S. at 412).

The Eleventh Circuit has held that the "clearly established law" requirement of § 2254(d)(1) does not include the law of the lower federal courts.  See Dombrowski v. Mingo, 543 F.3d 1270, 1274 (11th Cir. 2008) (citing Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001)).  Moreover, when no Supreme Court precedent is on point, the Eleventh Circuit has held that a state court's conclusion cannot be "contrary to clearly established Federal law as determined by the U.S. Supreme Court."  Id. (quoting Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003)).[10]

---

[10] In Dombrowski, the habeas petitioner claimed that the Florida state sentencing court violated his Fifth Amendment right against self-incrimination by failing to advise him of this right before soliciting his admission to prior convictions for sentencing enhancement purposes.  Id. at 1273.  Dombrowski argued that the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), was clearly established federal law guaranteeing his Fifth Amendment right not to testify at his sentencing hearing about his prior convictions.  Id. at 1274. Although the district court agreed that Miranda afforded Dombrowski such a right, the Eleventh Circuit was not persuaded and concluded that there is no clearly established federal law requiring sentencing courts to either determine that a defendant knows and understands the consequences of his admission to prior convictions for sentence enhancement purposes or to advise a defendant of his Fifth Amendment rights before hearing such an admission. Id. at 1276.  Thus, the court adhered to its previous decisions in Washington v. Crosby and Isaacs v. Head, in which the court held that "where no Supreme Court precedent is on point, we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court."  Id. (citing Isaacs, 300 F.3d 1232, 1252 (11th Cir. 2002); Washington, 324 F.3d at 1265).  In so deciding, the Eleventh Circuit stated that it was "mindful of the Supreme Court's reminder that 'rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule.'"  Dombrowski, 543 F.3d at 1276 (citing Williams, 529 U.S. at 382).  However, the court was convinced that Dombrowski's Fifth Amendment argument did not rise to the level of a generalized standard, let alone a bright-line rule.  Id.  The court noted the wide disparity in opinion among its sister circuits on this issue and the lack of Supreme Court precedent directly on point.  Id.  The court also noted the Supreme Court's explanation in Williams that "[w]here the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so

Notably, two other district judges in this District denied habeas relief on claims very similar to Petitioner's claim.  *See* Aquino v. McNeil, No. 4:06cv318/SPM/EMT, 2009 WL 2495762, at *1 (N.D. Fla. Aug. 10, 2009); Quintero v. McNeil, No. 4:08cv318/RH/MD, 2009 WL 1833872, at *1 (N.D. Fla. June 23, 2009).  In Aquino, the habeas petitioner was charged with sexual battery on a single child victim.  2009 WL 2495726, at *1.  The state trial court admitted evidence that Aquino had committed prior sexual acts on two other children.  *Id.*  Aquino asserted in his § 2254 petition that admission of the evidence violated his federal due process rights.  *Id.* at *5.  The district court held that Aquino was not entitled to federal habeas relief because there is no decision of the Supreme Court suggesting that admission of prior act evidence in the case at bar was unconstitutional.  *Id.* at *1.

Likewise, in Quintero, the habeas petitioner was charged with sexual battery on a single child victim.  2009 WL 1833872, at *1.  The state trial court admitted evidence not only that Quintero committed sexual batteries on the single victim but also that he also committed repeated sexual batteries years earlier on another child victim.  *Id.*  Quintero asserted in his § 2254 petition that the admission of this other-act evidence was unconstitutional.  *Id.*  The district court treated the issue as sufficiently raised on Quintero's direct appeal of his conviction and, thus, not procedurally defaulted.  *Id.*  The district court then denied habeas relief on the ground there was no clearly established federal law as determined by the Supreme Court suggesting that the admission of "other-act" evidence in the case at bar was unconstitutional.  *Id.*

The undersigned concludes that Petitioner is not entitled to relief for the same reason—he has failed to identify a Supreme Court case holding that the admission of similar fact or collateral crime evidence in circumstances such as the instant case was unconstitutional.  Evidence that Petitioner put his hand down Jenna S.'s pants and touched her bare buttocks while they were in a bedroom of his trailer corroborated the victim's testimony, not only by showing that Petitioner had a propensity to molest children, but that he had the intent and opportunity to molest the victim, R.P..  Both Jenna S. and R.P. were pre-adolescent (Jenna S. was 8 1/2 years old at the time of the

---

novel that it forges a new rule, one not dictated by precedent."  *Id.* (quoting Williams, 529 U.S. at 382) (internal quotation and citation omitted).  The Eleventh Circuit was satisfied, however, that such a case was not before it.  *Id.*

molestation, and R.P. was 9 years old (one day short of her 10th birthday)), and both girls were molested in Petitioner's trailer.  Before Jenna S. testified, the court instructed the jury that her testimony was to be considered only for the limited purpose of corroborating the victim's testimony, and this directive was repeated during the final jury instructions (Ex. F at 196, Ex. H at 525). Petitioner has pointed to no Supreme Court precedent holding that the admission of relevant evidence, even evidence of a defendant's other bad acts, violates the Due Process Clause, and, just as the district court determined in Aquino and Quintero, the undersigned has found none.[11]  He has

_____

[11] In Lisenba v. People of State of California, the defendant challenged on due process grounds the state trial judge's admission of live snakes at trial on the ground that the sole purpose of the production of the snakes was to prejudice the jury against him, and those in the courtroom, including the jury, were in a panic as a result of the snakes being brought into the courtroom.  314 U.S. 219, 228, 62 S. Ct. 280, 86 L. Ed. 166 (1941).  Noting that "[the Court] do[es] not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence," the Supreme Court held that the fact that evidence admitted as relevant by a trial court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process.  314 U.S. at 228–29.

In Estelle v. McGuire, the Supreme Court held that McGuire's due process rights were not violated during his prosecution for second degree murder of his infant daughter by the admission of evidence that the infant suffered from battered child syndrome because evidence of the victim's prior injuries was relevant to issue of intent.  502 U.S. 62, 70, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  The Court expressly declined to address the issue of whether the admission of irrelevant evidence violates the due process guaranteed by the Fourteenth Amendment.  502 U.S. at 70 (citing Spencer v. Texas, 385 U.S. 554, 563–64, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967) (rejecting argument that Due Process Clause requires exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose was served, and recognizing, "Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. . . . But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure.")).

In Dowling v. United States, the Supreme Court rejected a due process challenge to the admission of testimony regarding collateral crime evidence.  493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).  During Dowling's trial for bank robbery, the Government presented testimony of Vena Henry, who testified that a man wearing a knitted mask with cutout eyes and carrying a small handgun had, together with a man named Delroy Christian, entered her home approximately two weeks after a bank robbery in the town where she lived.  493 U.S. at 344.  Ms. Henry testified that a struggle ensued, and she unmasked the intruder, whom she identified as Dowling.  Id. at 344–45.  Based on this incident, Dowling had been charged under Virgin Islands law with burglary, attempted robbery, assault, and weapons offenses, but had been acquitted after a trial held prior to the federal trial on federal bank robbery and armed robbery charges.  Id. at 345.  The Supreme Court held that where the collateral crime testimony was "at least circumstantially valuable in proving [Dowling's] guilt," the admission of this testimony did not violate the Due Process Clause.  Id. at 353.  In so holding, the Court rejected Dowling's argument that admission of evidence relating to acquitted conduct is inherently unreliable, as well as his argument that the use of this type of evidence creates a constitutionally unacceptable risk that the jury will convict the defendant on the basis of inferences drawn from the acquitted conduct.  Id.

Moreover, while the Supreme Court has addressed whether prior acts evidence is permissible under the Federal Rules of Evidence, see Old Chief v. United States, 519 U.S. 172 (1997), Huddleston v. United States, 485 U.S. 681 (1988), the Court has not explicitly addressed admission of such evidence in constitutional terms.

thus failed to show that the First DCA's rejection of his due process claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.  *See, e.g.,* Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (denying federal habeas relief on petitioner's claim that admission of propensity evidence, that is, evidence of past uncharged sexual offenses, to lend credibility to victim's allegations of assault and kidnapping violated due process, on ground that petitioner pointed to no Supreme Court precedent establishing that admission of propensity evidence necessarily violates due process); Bugh v. Mitchell, 329 F.3d 496, 512–13 (6th Cir. 2003) (state court's admission of "other acts" evidence was not contrary to clearly established Supreme Court precedent, inasmuch as "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence"); *see also* Torres v. Runnels, 137 F. App'x 96 (9th Cir. 2005) (unpublished) ("Because there is no United States Supreme Court precedent holding that admission of evidence of prior sexual misconduct to show propensity violates due process, the state court's determination in this case cannot be contrary to or an unreasonable application of clearly established federal law and Torres is not entitled to habeas relief."); Lamarca v. Secretary, No. 8:06-cv-1158-T-17MSS, 2008 WL 3983124, at **28, 31 (M.D. Fla. Aug. 26, 2008) (unpublished) (federal habeas petitioner was not entitled to relief on claim that trial court violated due process in admitting collateral crime evidence where petitioner failed to cite any clearly established Supreme Court precedent which suggested, much less established, that state court's analysis contravened, or was unreasonable under, clearly established Supreme Court precedent), *certificate of appealability denied*, 568 F.3d 929 (11th Cir. 2009).[12]  *But see* Thornburg v. Mullin, 422 F.3d 1113, 1124 (10th Cir. 2005) (citing Estelle v. McGuire, 502 U.S. 62, 75 (1991) as clearly established Supreme Court law applicable to claim that trial court's erroneous admission of evidence violated due process and describing Estelle standard

---

In none of the Supreme Court cases discussed *supra* did the Supreme Court hold that the admission of relevant evidence, including collateral crime evidence or evidence of prior bad acts, violates a defendant's due process rights under the Fourteenth Amendment.

[12] The undersigned recognizes that opinions of circuit courts of appeals other than the Eleventh Circuit and opinions of district courts are not binding on this court and cites them only as persuasive authority.

as whether introduction of challenged evidence "so infused the trial with unfairness as to deny due process of law.").

    C.    <u>Ground Three: "Petitioner's right to due process, a fair trial, and effective assistance of counsel was violated when trial counsel failed to investigate the facts and law of the case to advise the court on the need for a proper Rule 403 analysis."</u>

Petitioner contends defense counsel was ineffective for failing to prepare for the status conference on December 11, 2003, when admissibility of the "similar fact" evidence was determined (doc. 1 at 13–15). He contends counsel should have studied section 404.18a of Charles W. Ehrhardt's treatise on the Florida Evidence Code, and the Second DCA's decision in <u>McLean v. State</u>, 854 So. 2d 796 (Fla. 2d DCA 2003) in preparation for the hearing (*id.*). He contends based upon these authorities, counsel could have argued: (1) according to Ehrhardt, Florida Statutes § 90.404(2)(b) should have been interpreted in conjunction with decisions interpreting Rule 414 of the Federal Rules of Evidence, which required the trial court to evaluate certain factors in determining the admissibility of the "similar fact" evidence under Florida Statutes § 90.403, and (2) according to <u>McLean</u>, the State was required to prove by clear and convincing evidence that the collateral act occurred, and the trial court was required to determine whether the probative value of the evidence was substantially outweighed by its prejudicial effect (*id.*). Petitioner asserts he raised this claim as Ground Six in his Rule 3.850 motion (*id.* at 16).

Respondent adopts its argument as to Ground Two (doc. 28 at 7). Respondent additionally adopts the state postconviction court's denial of Ground Six of Petitioner's Rule 3.850 motion, and contends that decision did not contradict or misapply <u>Strickland</u> (*id.*).

    1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

    2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Six in his Rule 3.850 motion (Ex. P at 54–55). The state circuit court adjudicated the claim as follows:

    Defendant claims Counsel was ineffective for agreeing the *Williams* rule evidence should be allowed and not requiring the State to prove the crime and thus not ensuring Defendant's due process rights were protected. He argues had counsel fully understood the law regarding *Williams* rule evidence, J.S's testimony would have been excluded or the issue would have been preserved for appellate review. He

argues counsel agreed as long as it was the same type of charge, it was automatically allowed, relieving the State of its burden to prove the collateral crime.  Defendant bases his argument on the Florida Supreme Court's opinion in *McLean v. State*, 934 So. 2d 1248 (Fla. 2006).  This opinion was not available until well after the trial. Instead, the trial court ruled to allow the *Williams* rule evidence without an evidentiary hearing pursuant to *McLean v. State*, 854 So. 2d 796 (Fla. 2d DCA 2003). (Exhibit H, p. 303–305.)[FN5: Exhibit H consists of portions of a December 11, 2003, hearing transcript and is referenced by the record page numbers.].

This claim is refuted by the record and is without merit.  Counsel argued against admission of the *Williams* rule evidence at the hearing on the matter. (Exhibit H. pp. 299–303.)  Upon the court's ruling, counsel made his objection. (Exhibit H, pp. 304–305.)  He raised the issue in a motion for new trial, which was denied.  (Exhibits F, G.)  Counsel renewed his objections repeatedly at trial, including prior to introduction of the evidence, in a motion for judgment of acquittal, and upon conclusion of the defense's case.  (Exhibit E, pp. 142–43, 272–275, 453.) The case, including the *Williams* rule issue, was per curiam affirmed.  *See State v. Waters*, 718 So. 2d 225, 226 (Fla. 2d DCA 1998) (claim that counsel was ineffective for failing to file a motion in limine as to *Williams* rule evidence was properly denied where the appellate court had previously per curiam affirmed the judgments and sentences in all respects, including the *Williams* rule evidence issue).

(Ex. P at 108–09.)

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. S).  Petitioner contends the First DCA's per curiam affirmance does not constitute an adjudication of the merits of his claim; therefore, no deference is due the decision (doc. 35 at 14).  However, this argument was recently squarely rejected by the Eleventh Circuit.  *See* Shelton v. Sec'y, Dep't of Corr., — F.3d —, 2012 WL 3641008, at *3 (11th Cir. Aug. 24, 2012) (a state court's simple one-word affirmance is presumed to be an adjudication on the merits of the federal habeas petitioner's claim) (citing Harrington, 131 S.Ct. at 784–85); *see also* Childers v. Floyd, 642 F.3d 953, 969 (11th Cir. 2011) (en banc) ("[A]n 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar," and deference is presumed "unless the state court clearly states that its decision was based solely on a state procedural rule.").

The transcript of the hearing held December 11, 2003, demonstrates that the trial court and counsel for the parties were familiar with section 404.18a of Ehrhardt's treatise on the Florida

Evidence Code and the Second DCA's decision in <u>McLean</u>, prior to the trial court's ruling on the admissibility issue (Ex. H at 294–96).  During defense counsel's argument, he argued that despite section 90.404(b)(2) and <u>McLean</u>, the trial court was still required to perform a balancing test under section 90.403 to determine whether the probative value of the evidence was substantially outweighed by its prejudicial effect (*id.* at 302–05).  The transcript reflects that counsel and the court had an accurate understanding of the evidentiary rules involved and the proper analysis and disposition of the issue under those rules.  Petitioner failed to show a reasonable probability that the trial court would have excluded the "similar fact" evidence had counsel made the arguments Petitioner faults him for not making.  Therefore, the state court's denial of his ineffective assistance of counsel claim was not an unreasonable application of <u>Strickland</u>.

> D.    <u>Ground Four:  "Petitioner's right to due process, a fair trial and effective assistance of counsel was violated when counsel failed to investigate facts and law of case to challenge factual basis of expert opinion testimony that validated State's false reading of the expert's own notes and when trial court abused its discretion by allowing State to knowingly misquote expert's notes."</u>

Petitioner contends defense counsel was ineffective for failing to object to Donna Englehart's expert opinion testimony as to what the victim and Jenna S. meant when they asked her, during a counseling session, "what Dave did that was wrong" (doc. 1 at 17–19).  He asserts Ms. Englehart was a mental health counselor who conducted counseling sessions with the victim and Jenna S., most of them jointly with both girls (*id.*).  Petitioner asserts that during Ms. Englehart's direct testimony, defense counsel asked her whether she wrote in her notes from one of the counseling sessions that both girls "wanted to know what Dave did that was wrong" (*id.*).  Petitioner states on cross-examination by the prosecutor, the prosecutor asked Ms. Englehart if she wished to explain that phrase in her notes, but the prosecutor misquoted the phrase as "didn't understand what David did was wrong" (*id.*).  He states Ms. Englehart then testified as to her opinion of what the girls meant by their question (*id.*).  Petitioner asserts defense counsel should have objected to this expert testimony on the ground that the factual basis for her testimony was unreliable, because the prosecutor misstated the actual wording of Ms. Englehart's notes (*id.*).  He additionally contends counsel should have objected to her opinion testimony on the ground that she was not qualified as an expert to give such testimony, especially since she stated in her pre-trial deposition that

counseling young females regarding allegations of improper sexual contact was "not her forte" (*id.*).

Petitioner additionally contends the trial court abused its discretion by allowing the prosecutor to

misquote Ms. Englehart's written notes and allowing Ms. Englehart to answer the question (*id.*).

Respondent divides Petitioner's claim into three sub-claims:  (1) defense counsel failed to

challenge the reliability of Ms. Englehart's expert opinion, (2) defense counsel failed to object to

Ms. Englehart's expert testimony on the ground that she was not qualified to provide the expert

opinion testimony, and (3) the trial court abused its discretion by allowing the prosecutor to

mischaracterize Ms. Englehart's notes (doc. 28 at 7–12).  Respondent contends the only issue with

regard to Ms. Englehart's testimony which Petitioner presented to the state courts was a claim that

defense counsel was ineffective for failing to object to the prosecutor's rewording of Ms. Englehart's

notes, raised as Ground Fifteen in Petitioner's Rule 3.850 motion (*id.* at 10).  Respondent contends

Petitioner did not fairly present, and therefore, did not exhaust, either of the claims raised in sub-

claims 1 and 2  (*id.* at 9–12).  As to sub-claim 3, Respondent contends the claim of trial court error

is procedurally barred from federal review, because Petitioner should have raised it on direct appeal

but failed to do so (*id.* at 11–12).

In his reply, Petitioner contends he fairly presented sub-claim 1 to the state court as Ground

Fifteen of his Rule 3.850 motion (doc. 35 at 16).  As to sub-claim 3, Petitioner concedes that the

claim of trial court error should have been raised on direct appeal, but he contends he showed cause

for the procedural default by arguing ineffective assistance of appellate counsel in his state habeas

petition (*id.* at 17).  Petitioner does not address the exhaustion issue as to sub-claim 2 (*id.* at 15–17).

The record provides the context of Ms. Englehart's testimony.  Defense counsel called Ms.

Englehart as a witness (Ex. G at 359).  Ms. Englehart testified she provided counseling services to

the victim and Jenna S., after the girls' school referred them to her (*id.* at 359–61).  Defense counsel

asked Ms. Englehart, "did you find that on at least one occasion that the, in one of these joint

sessions that neither [the victim] nor Jena [sic] S[] could remember what it was that the person

alleged to have made this untoward touching, they could not remember what it was that he had done

wrong." (*id.* at 361).  Ms. Englehart responded that she could not recall, but her notes would refresh

her recollection (*id.*).  Ms. Englehart read her notes and testified she wished to explain why she

wrote that note (*id.* at 362).  She was instructed to only answer defense counsel's question, and she

then admitted she wrote that notation (*id.* at 363).  Defense counsel asked whether she recalled

another occasion when the victim told her she did not remember what happened, and Ms. Englehart

responded, "Yes" (*id.* at 363–64).

On cross-examination, the prosecutor asked:

> Q.  You wanted a moment to explain the phrase, "didn't understand what
> David did was wrong", or something to that effect?
>
> A.  Right. Thank you.
>
> Q.  Would you take the opportunity now to tell us what it was you wanted to
> say about that?
> . . . .
> A.  I was getting the feeling that they were—

(Ex. G at 366).  Defense counsel objected on the ground that the question called for speculation (*id.*).

The court noted that Ms. Englehart had not been qualified as an expert (*id.*).  The prosecutor then

elicited testimony that Ms. Englehart had a Masters of Science degree in Human Development and

Counseling, and she was a Licensed Mental Health Counselor in the State of Florida (*id.* at 367–68).

She testified she most frequently counseled children from kindergarten to 12th grade, and had

conducted 20–25 hours per week of clinical counseling of students for the past eight and a half years

(*id.* at 368–69).  The prosecutor then offered Ms. Englehart as an expert in clinical counseling of

adolescents (*id.* at 370).  Outside the presence of the jury, the prosecutor proffered Ms. Englehart's

testimony:

> MR. MASSEY [the prosecutor]:  Ma'am, before we took the aside to talk
> about your training and your experience, you began to tell me about what a feeling
> was that you had.
>
> We were addressing an issue where the children were evidently trying to
> understand what they did wrong.
>
> Can I focus your attention in that regard?
>
> A.  Yes.
>
> Q.  And let me proceed with that response.

MR. ROLLO [defense counsel]:  Actually, that's a mischaracterization of what the testimony was.

The question was put to the witness to determine whether or not they actually said that they could not remember what the alleged perpetrator, David, had done.

And that may differ from his question that he asked.

. . . .

MR. MASSEY:  Ma'am, do you have an opinion about some statements made by the children that you counseled, both Jena [sic] and [the victim], concerning statements in which one or the other may have inquired about what David did wrong?

THE COURT:  Before you answer.

Any objection to that question in front of the jury?  In that form?

MR. ROLLO:  I think it is an improper question.

. . . .

The objection is that's not—I don't think she can interpret . . . I don't believe that even an expert can interpret the mental functions that are going on in a person's mind when they make a statement.

I mean, if she is going to make some kind of a contextual opinion, that is different than trying to get into the internal gymnastics of what they meant and how she interpreted it.

I don't think she's, well, she's not qualified to do that.  She may be qualified to give counseling services, but not—

THE COURT:  I'll allow her to give her opinion.  And then if you want on redirect, you can explore that in depth.

. . . .

MR. MASSEY:  If we may, Judge, may we hear the answer, and then maybe we can better understand how to construct the question.

THE WITNESS:  I tried—I was hearing that they felt David was their friend, and that they didn't—they still thought he was their friend.

So I reminded them that it was not okay for an adult to ask you to look at them or to ask them to have, to let them look at—I redefined, I defined what is right and wrong with an adult and a child.

It is not okay for someone to ask you to look at them or to touch them, and vice versa.  You know, that is not okay.

So—that's what I was referring to in that note.

. . . .

MR. ROLLO:  I think it assumes a lot of facts that are not in evidence.

I realize that she can opine about things, but she even set up a hypothetical, and her answer reflects that.

She said, "If this happened that was wrong."

And for the purposes of these narrow questions it hasn't been established that either of these children told her the predicate acts to form the hypothetical that she set up.

She's already said she never discussed the acts in detail, so we are travelling [sic] under a hypothetical where she's suggesting to them, "If it happened it is wrong."  And then interpreting something that they said as a result of her post hypothetical.

THE COURT:  The Court rules as follows:

The defense opened the door.  It is a legitimate cross; I'll permit the question and the answer.

(Ex. G at 372–77).

The jury returned, and the prosecutor continued his cross-examination of Ms. Englehart:

Q.  Ma'am, a moment ago you were asked a question on direct by Mr. Rollo, having to do with the children's understanding of what they did wrong, or something to that affect [sic].

A.  Yes.

Q.  Do you have an opinion about what you were hearing from the children in regard to your counseling session with them as to that comment?

A.  I was getting the feeling that the children were looking at him as being their friend.  And they felt, they were not really sure what they did wrong.

And in general terms, I told them that it is not okay for anyone to ask you to look at them or to touch them or vice versa.

I, you know, clearly explained the appropriate boundaries between, you now, adults and children. And, you know, left it like that.

(Ex. G at 377–78).

On re-direct, defense counsel asked:

Q.  Ms. Englehart, with respect to the opinion that you gave, did you tell me earlier that on an earlier occasion, not today, that you felt like they did not—both [the victim] and Jena [sic]—did not have an understanding of improper adult to child conduct?

A.  Yes.

. . . .

Q.  If you learned for a fact that both of their parents . . . had instructed both Jena [sic] S[] and [the victim] as to what improper sexual touching would be from an adult to them, and had warned them of that, and had advised them not to allow anybody to touch them in that way, would that change your interpretation of what you think they were meaning when they said, "We want to know again what it was that David did wrong."

Would that change your interpretation or your opinion?  Those extra added facts?

A.  That's hard to say a "yes" or "no."

Children are easily infatuated and are misled so easily.  And when you have someone that you trust and that you like, asking you to do things—or—I can't say no—

MR. ROLLO:  If you will let me address the Court.

To the extent that that's non-responsive and adds facts never put to the witness in the question, I think it needs to be stricken.  Non-responsive.

MR. MASSEY:  Judge, I believe it is the witness' effort to answer the question fully and completely.

THE COURT:  Overruled.

. . . .

Q [by defense counsel]:  And you answered the question by using an additional phrase, "easily infatuated."  And that's an observable fact in pre-adolescent females, isn't it?

A.  Yes.

Q.  Easily infatuated.  With even innocent attention put upon them by males that are older, isn't that true?

A.  Yes.

(Ex. G at 379–82).

1.    <u>Sub-claim 1:  defense counsel's failure to object to Ms. Englehart's expert testimony on the ground that the factual basis for her testimony was unreliable, because the prosecutor misstated her notes.</u>

As Ground 15 in Petitioner's Rule 3.850 motion, Petitioner argued counsel was ineffective for failing to object to Ms. Englehart's testimony, "I was getting the feeling that the children were looking at him as being their friend.  And they felt, they were not really sure what they did wrong", on the ground that it was based upon an inaccurate factual predicate, namely, the prosecutor's misquoting her notes (Ex. P at 67–68).  This is the same claim Petitioner presents here in Ground Four, sub-claim 1, of his federal petition.  Therefore, this sub-claim was exhausted.

The state circuit court denied the claim on the ground that the record established that defense counsel objected to the prosecutor's characterization of the question during the proffer of Ms. Englehart's testimony, and the court allowed the question (Ex. P at 113).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. S).

The state courts' adjudication of Petitioner's claim was not unreasonable under <u>Strickland</u>.  The record demonstrates defense counsel specifically objected to the prosecutor's question during the proffer of Ms. Englehart's testimony (Ex. G at 372).  Additionally, counsel rigorously objected to Ms. Englehart's opinion testimony regarding her interpretation of the girls' question regarding the impropriety of Petitioner's contact.  The trial court ruled the testimony admissible, and Petitioner failed to show the testimony would have been properly excluded if counsel had repeated his objection during Ms. Englehart's actual testimony.  Moreover, defense counsel reinforced to the jury during closing argument that Ms. Englehart testified that her session notes reflected that the girls wanted to know what Petitioner did wrong, thus reinforcing the actual, accurate wording of her notes (Ex. H at 497, 499–500).  Petitioner therefore failed to demonstrate deficient performance or

prejudice with regard to counsel's alleged failure to object to the prosecutor's rewording of Ms. Englehart's notes in his question to Ms. Englehart, and Ms. Englehart's responding to that question.

> 2.      Sub-claim 2:  defense counsel's failure to object to Ms. Englehart's opinion testimony on the ground that she was not qualified to provide an expert opinion.

Petitioner did not present this claim within Ground Fifteen or any other ground of his Rule 3.850 motion.  Therefore, the claim was not exhausted.  Notwithstanding the failure to exhaust, the claim is without merit.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  The record demonstrates defense counsel <u>did</u> object to Ms. Englehart's competency to give expert testimony regarding her interpretation of the girls' question during the counseling session (Ex. G at 366–67, 372–74, 376).  Therefore, Petitioner is not entitled to relief on sub-claim 2.

> 3.      Sub-claim 3:  trial court abused its discretion by allowing Ms. Englehart's testimony based upon prosecutor's rewording of Englehart's session notes.

Petitioner's contention that the trial court abused its discretion by permitting Ms. Englehart's testimony does not present a federal claim.  As previously discussed, the state trial court's evidentiary rulings are generally not challengeable in federal habeas.  *See* <u>Alderman</u>, 22 F.3d at 1555; *see also* <u>Baxter</u>, 45 F.3d at 1509.  Further, even if Petitioner claimed that the trial court's alleged error violated his federal due process rights, he failed to demonstrate that the court's allowing Ms. Englehart to explain the meaning of her session notes, even though the prosecutor mischaracterized the actual content of the note when he asked her the meaning of it, was of such magnitude as to deny Petitioner a fair trial.  Ms. Englehart testified on direct examination as to the actual wording of her session note, she explained the meaning of that notation during cross-examination, and defense counsel referenced the actual wording of the notation during closing argument.  The trial court's failure to require the prosecutor to accurately phrase the notation in his question to Ms. Englehart was not material or a critical factor at trial.  Therefore, notwithstanding Petitioner's failure to properly exhaust this claim (a point which Petitioner concedes (*see* doc. 35 at 17)), he is not entitled to federal habeas relief.

> E.      Ground Five: "Petitioner's 5th, 6th, and 14th Amendment rights were violated when counsel failed to challenge unsubstantiated allegations of criminal acts in the pretrial

<u>investigation report as being unproven by a preponderance of the evidence and when the</u>
<u>court used same for consideration during sentencing.</u>

Petitioner asserts defense counsel was ineffective for failing to object to allegations of his ex-wife included in the pre-sentence investigation report ("PSI") (doc. 1 at 21–22).  He states his ex-wife alleged he purchased pornography, possessed child pornography, and lived with an underage female when he was stationed in Germany in the Army (*id.*).  He concedes defense counsel objected to the court's considering the allegations on the ground that they were irrelevant and constituted hearsay (doc. 1 at 21, doc. 35 at 18), but he contends counsel should have argued that the allegations were unsubstantiated, untrue, and unreliable (*id.*).  He contends if counsel had argued these points, there is a reasonable probability he would have received a more lenient sentence (*id.*).  He additionally claims the trial court erred by considering the inaccurate information in determining his sentence (*id.*).  He states he raised this claim as Ground Fourteen in his Rule 3.850 motion (*id.* at 23).

Respondent contends the state court's adjudication of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law (doc. 28 at 12–13).


1.       Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs Petitioner's ineffective assistance of counsel claim.

2.       Federal Review of State Court Decision

Although Petitioner raised both aspects of this claim (ineffective assistance of counsel and trial court error) as Ground Fourteen in his Rule 3.850 motion (Ex. P at 65–66), the postconviction court ordered the claim stricken as insufficiently pled, with leave to amend (*id.* at 88–89).  Petitioner filed an amendment raising only the ineffective assistance of counsel aspect of his claim (*id.* at 96–100).  The state circuit court adjudicated Ground Fourteen as follows:

> Defendant claims trial counsel was ineffective for failing to be familiar with laws concerning his ex-wife's criminal accusations in the presentence investigation and for not being prepared to rebut the accusations with available evidence or inform Defendant he could challenge the accusations when he addressed the court.

Defendant alleges his ex-wife stated Defendant had possessed child pornography, had told her he had lived with a 14-year-old girl in Germany, took her to Atlanta to shop at adult bookstores, and required her to dress in a very young way and photographed and videotaped their sexual encounters.  Defendant argues counsel should have advised the trial court unsubstantiated allegations of misconduct are impermissible.  Defendant alleges two other witnesses could have testified or submitted a sworn statement to refute the accusations.  He claims but for these errors, the court may have considered a more lenient sentence.

 To the extent Defendant is claiming the trial court should not have considered the ex-wife's statements, his claim is an appellate issue and is not cognizable for postconviction review.  Defendant's claim of prejudice that counsel failed to preserve the issue for appeal is insufficient.

 The claim is otherwise without merit.  Counsel is not ineffective for failing to advise the court as to the law.  Counsel did object to the statements as hearsay and irrelevant.  (Exhibit I.)[FN6: Exhibit I consists of a portion of the sentencing hearing transcript.]  Defendant may not now challenge the trial court's consideration of the statements in the guise of an ineffective assistance of counsel claim.  *See Pooler v. State*, 980 So. 2d 460, 470–471 (Fla. 2008).  Moreover, the trial court may consider the "social history of the offender, including his or her family relationship, marital status, interests, and related activities."  *See* § 921.231(1)(g), Fla. Stat. (2003).

 Defendant argues but for counsel's errors, the trial court may have considered a more lenient sentence.  This statement is conclusory and speculative.  According to the scoresheet, Defendant faced a minimum penalty of 142.50 months incarceration and a maximum sentence of 60 years.  (Exhibit J.)  Although the trial court stated it would consider the statements, there is no reasonable probability the outcome would have been different if the trial court had not considered his ex-wife's statements or had Defendant had an opportunity to refute them.

(Ex. P at 112–13).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. S).

The state court's adjudication of Petitioner's ineffective assistance of counsel was not unreasonable under Strickland.  Petitioner contends defense counsel should have argued that his ex-wife's statements to investigators were untrue, unsubstantiated, and unreliable.  However, the grounds for objection asserted by counsel, hearsay and relevance, were reasonable, in fact, counsel's hearsay objection went to the reliability of the statements.  Further, Petitioner had an opportunity to dispute the allegations during his statement to the sentencing court prior to imposition of sentence

(Ex. B at 260–62).  Moreover, the court heard evidence refuting the ex-wife's allegations through the testimony of Petitioner's mother, who stated she talked to Petitioner's ex-wife and, "she has told me that she felt very intimidated by the officer that came to speak to her.  She was upset with my son.  Of course, she's the ex-wife.  But she told me herself that she did not think he was guilty." (*id.* at 256).  Petitioner failed to show that defense counsel performed deficiently, or that there is a reasonable probability the outcome of the sentencing proceeding would have been different had counsel argued that the ex-wife's allegations were untrue and unsubstantiated, or had he presented evidence to refute the allegations.[13]

Moreover, Petitioner's claim that the sentencing court violated his due process rights by considering his ex-wife's allegations in imposing sentence is without merit.  Petitioner contends the sentencing court violated Townsend v. Burke, 334 U.S. 736 (1948), which clearly established that a sentencing court's reliance on materially untrue information violates due process (doc. 38 at 18–19).

In Townsend the Supreme Court held that the absence of counsel during sentencing after a plea of guilty coupled with "assumptions concerning his criminal record which were materially untrue" deprived the defendant in that case of due process.  The Supreme Court reasoned that either the State had submitted inaccurate information or the sentencing court had misinterpreted the information received, and the uncounseled defendant had no way of effectively preventing the court from "proceeding on such false assumptions" which were "materially untrue." 334 U.S. at 740.  The court emphasized that it was not ruling in the defendant's favor because the sentence was severe.  Rather, it found that the sentencing violated due process because of the "careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide . . . ." *Id.* at 741.  The

---

[13] The evidence Petitioner alleged counsel could have presented was testimony of John Poet, Chris Fridley, and Petitioner himself (Ex. P at 99–100).  Petitioner alleged Mr. Poet was living with Petitioner's ex-wife and would have testified she had a reputation for lying (*id.* at 99).  However, Petitioner did not proffer any evidence, other than his own self-serving speculation, that Mr. Poet was available and willing to testify at his sentencing hearing, and that he would have testified as Petitioner suggests.  Petitioner additionally alleged counsel could have presented testimony from Chris Fridley, who "could have been found" and could have testified that he served with Petitioner in Germany and lived in the barracks with him, and at no time did Petitioner date or live with any underage girls (*id.*).  However, as with Mr. Poet, Petitioner failed to proffer any evidence of Mr. Fridley's availability and willingness to provide testimony, or that he would have testified as Petitioner suggests.

Court concluded, "In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner." *Id.*

Townsend is a case of limited application based on its particular facts.  Further, the basis for the Supreme Court's determination that the defendant had not received due process was the fact that the defendant was not represented by counsel and thus had no way of effectively contesting the apparently inaccurate information relied upon by the sentencing court.  In the instant case Petitioner was represented by counsel and, as previously discussed, he received effective assistance of counsel, despite his assertions to the contrary.  Moreover, nothing in the record indicates that the court's sentencing decision was actually based upon the ex-wife's statements to investigators.  Therefore, Petitioner failed to demonstrate that the sentencing court violated his due process rights.

     F.    <u>Ground Six:  "Petitioner's right to due process, a fair trial and effective assistance of counsel was violated when counsel failed to investigate facts and law of case to bring to attention of the jury the numerous inconsistencies in victim's testimony concerning location and presence of others during the alleged abuse.</u>

Petitioner asserts defense counsel was ineffective for failing to impeach the victim with her prior inconsistent statements to police and a school counselor (Ms. Johnson) regarding where the alleged molestation occurred and who was present in the trailer when it occurred (doc. 1 at 24–25).  Petitioner additionally contends defense counsel should have impeached the victim's credibility with testimony of Leah Miller, Jenna S.'s mother, that the victim was never at Petitioner's trailer alone (*id.*).  Petitioner asserts he raised this claim as Ground Nine in his Rule 3.850 motion (*id.* at 25).

Respondent contends Petitioner did not exhaust the part of his claim faulting counsel for failing to impeach the victim with her prior statements to Ms. Johnson (doc. 28 at 15–16).  Therefore, that factual basis may not be considered by this court (*id.* at 16).  As to the remaining allegations, Respondent contends the state court's adjudication of the claim was not unreasonable under Strickland (*id.* at 13–15).

In his reply, Petitioner contends the factual basis for his claim, both here and in state court, was defense counsel's failure to use available evidence and testimony to impeach the victim's statements as to where the crime occurred, who was present when the incident occurred, and whether

she was ever alone with Petitioner at his trailer (doc. 35 at 20–21).  He contends his allegation as to counsel's failure to use Miss Johnson's testimony for impeachment simply "clarified the depth of counsel's ineffectiveness" (*id.* at 20).

        1.       Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs Petitioner's claim.

        2.       Federal Review of State Court Decision

In Ground Nine of Petitioner's Rule 3.850 motion, he argued counsel was ineffective for failing to review prior statements and depositions in preparation for trial, and failing to impeach the victim's trial testimony by properly questioning her and other State's witnesses (Ex. P at 58–60). The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective for failing to properly question R.P. [the victim] where at Defendant's residence the alleged act occurred.  Defendant alleges R.P. had prior to trial stated an act occurred in the living room.  Defendant alleges Ms. Miller testified R.P. never came over when everybody was not there. Defendant asserts counsel could have then elicited testimony from Ms. Miller and J.S. [Jenna S.] to show the act could not have occurred there without them noticing as the living room is centrally located and open to other parts of the house. Alternatively, if R.P. had stated another location, her credibility would have been severely damaged.  Because the State's case was based on the credibility of R.P., the jury would have come to a different conclusion.

> R.P. testified there were two incidents and both occurred in Defendant's trailer.  (Exhibit E, p. 157.)  The first one happened during a time when Defendant was at the residence by himself.  (Exhibit E, p. 173.)  The second one happened the morning after a party and sleepover in a bedroom while others were elsewhere in the residence.  (Exhibit E, pp. 181–183).

> Actually, Ms. Miller testified the only times to her knowledge R.P. came over was when everybody was there.  (Exhibit E, p. 129.)  This testimony is not necessarily inconsistent with R.P.'s testimony and further questioning would not have refuted R.P.'s testimony she was molested by Defendant at the residence when others were not present.

(Ex. P at 110–11).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. S).

The state court's adjudication of Petitioner's ineffective assistance of counsel was not unreasonable under Strickland.  The victim consistently stated, in her trial testimony and in

statements to police and Ms. Johnson, that Petitioner inappropriately touched her on two occasions at his trailer (*see* Ex. E at 68–69, 72–73, 157, 161–64, ).   Contrary to Petitioner's assertions, the victim's pre-trial statements to police and Ms. Johnson regarding where the first incident occurred and who was at the trailer at the time, were not necessarily inconsistent with her trial testimony.   The victim testified she told Ms. Johnson that Petitioner "touched me in wrong places" (Ex. F at 154–56).   She testified Petitioner kissed her on the lips and "in the mouth" and touched her vagina with his tongue (*id.* at 165).   On cross-examination regarding this first incident, she testified as follows:

> Q [by defense counsel].  . . . it's true, isn't it, that you never visited Mr. Lutz when he was there by himself; that's true?
>
> A.  Yes.
>
> Q.  When was that?
>
> A.  When I went over there to see Jenna and they were there.
>
> Q.  I[s] that one of the times when this touching happened or another time?
>
> A.  It was the time that—of the touching, the very first time.

(Ex. E at 172–73).

Ms. Johnson's trial testimony regarding the victim's description of this first incident of molestation was the following:

> Q.  Did she say where this touching occurred?
>
> . . . .
> A.  She said she was in a trailer.
>
> Q.  Did she indicate where that trailer was or how did she connect that in any way?
>
> A.  She said this man was working on this trailer to fix it up or remodel it, and that she was on the grounds, and that's when she first met the person and it happened the first time.
> . . . .
> The way I understood it, her friend was going to move into that trailer and her friend was there.

(Ex. E at 68–69).

Further, Ms. Johnson's pre-trial testimony regarding the victim's description of the first incident was not necessarily inconsistent with the victim's testimony set forth *supra*. Ms. Johnson testified during the pre-trial hearing that the victim described the first incident as follows:

> She told me that a man had touched her in a trailer and she, she has been in this trailer with a friend. And this man had, was remodeling the trailer or repairing the trailer. And that she stayed after her friend left. And the man kissed her and put his hands in her pants and touched her in an inappropriate place.

(Ex. B at 137). When defense counsel asked whether the victim changed her story from first stating she was alone with Petitioner when the touching occurred and then reporting that it occurred after Jenna left the trailer, Ms. Johnson responded that the victim never changed her story (*id.* at 150). Ms. Johnson testified that from the very beginning, the victim said she was at Petitioner's residence when Jenna was present, Jenna and her mother left, and that is when the touching occurred (*id.* at 150–51).

Additionally, Leah Miller's (Jenna's mother) testimony that, to her knowledge, the victim came over to the trailer only when she, Jenna, and perhaps Bernard (Ms. Miller's boyfriend) were present, was not necessarily inconsistent with the victim's testimony. Indeed, it was consistent with the victim's trial testimony and her statement to Ms. Johnson that Jenna and her mother were initially present when she went to the trailer.

As to the second incident, the victim consistently testified that the touching occurred on the morning after the slumber party in Jenna's bedroom, when the others (Leah Miller, Bernard, Jenna, and Cassie) were in the livingroom (Ex. E at 161–64, 182–89).

Defense counsel did not perform deficiently by failing to impeach the victim's credibility with her prior statements to others regarding where the molestation occurred and who was in the trailer at the time. Therefore, the state court's adjudication of this claim was not an unreasonable application of Strickland.

     G.    <u>Ground Seven: "Petitioner's due process rights were violated when trial counsel failed to challenge state's nolle prosequi of severed collateral evidence charge as being improperly motivated and therefore filed in bad faith."</u>

Petitioner contends defense counsel should have objected to the State's announcing a nolle prosequi on the severed lewd and lascivious charge involving the other victim, Jenna S., on the ground that the State's dismissal was in bad faith (doc. 1 at 26–27).  He contends the State should have been required to prove the charge, since they used Jenna S.'s testimony as collateral crime evidence in the trial involving R.P. (*id.*).  He contends if counsel had objected to the nolle prosequi, he would have proceeded to trial on the severed charge, been acquitted, and then would have successfully challenged his conviction on the first two charges (*id.*).  Petitioner asserts he raised this claim as Ground Thirteen in his Rule 3.850 motion (*id.* at 28).

Respondent contends Petitioner's claim presents purely a question of state law and, therefore, is not cognizable in federal habeas (doc. 28 at 17–18).  Respondent additionally contends even assuming the State acted in bad faith by declining to prosecute the severed charge, Petitioner has suffered no harm cognizable in federal habeas (*id.* at 19).

Petitioner's substantive claim is a federal claim of ineffective assistance of counsel. Therefore, he has presented a cognizable claim.

       1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs Petitioner's claim.

       2.      Federal Review of State Court Decision

Petitioner presented this claim as Ground Thirteen in his Rule 3.850 motion (Ex. P at 63–64). The state court denied the claim on the ground that under Florida law, it is within the State's sole discretion to nolle prosse a case (*id.* at 112 (citing State v. Aguilar, 987 So. 2d 1233, 1235 (Fla. 5th DCA 2008)).  Petitioner appealed to the First DCA, and the court affirmed (Ex. S).

Given the state court's holding, Petitioner cannot make the showings required under Strickland to demonstrate ineffective assistance.  If the State's nolle prosse was proper under Florida law, as the Florida court stated it was, Petitioner's counsel's performance in failing to challenge the nolle pros cannot be considered deficient.  *See* Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989) (holding where "claims were meritless, it was clearly not ineffective for counsel not to pursue them.").  This finding also means Petitioner cannot show that he suffered prejudice resulting from his attorney's performance.  *See* Lockhart, 506 U.S. at 374 ("the court making the prejudice

determination may not consider the effect of an objection it knows to be wholly meritless under current governing law. . . .") (O'Connor, J. concurring).

Further, Petitioner's reliance upon State v. Goodman, 696 So. 2d 940 (Fla. 4th DCA 1997) is misplaced.  In Goodman, the Fourth DCA found a federal due process violation when the State nolle prossed a case immediately after jury selection, during which it had unsuccessfully attempted to strike a prospective juror on account of his race, and then re-filed the case thirty minutes later. 696 So. 2d at 942–43.  The court noted that allowing the State to proceed with the re-filed charge would have the intolerable effect of permitting the State to avoid the constitutional prohibition against excluding persons from the jury based upon race, established by the Supreme Court in Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).  Id. at 943.

In the instant case, the prosecutor stated at Petitioner's sentencing hearing that the reason for the nolle prosequi was that the parents of the child victim had requested it (Ex. B at 270).  This was not a constitutionally improper purpose.  Florida courts have not found due process violations where there was no showing that the State's action was motivated by a constitutionally improper purpose. See State v. Montgomery, 68 So. 3d 342 (Fla. 4th DCA 2011) (no indication of improper purpose that would give rise to due process violation where State entered nolle prosse and re-filed case with amended information, clarifying identity of victim of one charge, due to trial court's refusal to rule on State's motion to amend the information until after the jury was sworn); State v. Hurd, 739 So. 2d 1226, 1228 (Fla. 2d DCA 1999) (no indication of improper purpose that would give rise to due process violation where State entered nolle prosse due to unexplained absence of indispensable witness).

Petitioner failed to demonstrate that the state court's adjudication of his claim was an unreasonable application of Strickland.  Therefore, he is not entitled to relief on Ground Seven.

H.    Ground Eight:  "Trial court vindictively sentenced Petitioner when Petitioner repudiated the court's multiple unsolicited plea offers."

Petitioner contends the trial court vindictively sentenced him because he rejected the court's efforts to dispose of the charges through a guilty plea (doc. 1 at 29).  He asserts he raised this claim as Ground Nineteen in his Rule 3.850 motion (id. at 30).

Respondent contends the state court disposed of this claim on an independent and adequate state procedural rule, that is, the claim could and should have been raised on direct appeal (doc. 28 at 19).

In his reply, Petitioner concedes the claim should have been raised on direct appeal (doc. 35 at 23).  However, he asserts the procedural default was caused by ineffective assistance of appellate counsel (*id.*).  He contends he presented this claim of ineffective assistance of appellate counsel in his state habeas petition (*id.*).

The record demonstrates that Petitioner raised his vindictive sentence claim as Ground Nineteen in his Rule 3.850 motion (Ex. P at 74–77).  The state court determined that Petitioner's claim could have been raised on appeal (*id.* at 116 (citing Smith v. State, 909 So. 2d 972, 973 (Fla. 2d DCA 2005)).  The court alternatively denied the claim on the merits (*id.*).  Petitioner appealed the decision to the First DCA, and the court affirmed the lower court's decision (Ex. S).

The state court clearly and expressly stated it was relying on a state procedural rule to resolve Petitioner's federal claim.[14]  Further, the state court's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law.  Additionally, the state procedural rule that a vindictive sentencing claim is properly raised on direct appeal instead of in a postconviction proceeding is firmly established and regularly followed by the Florida courts. *See* Smith, 909 So. 2d at 973 (affirming postconviction court's denial of claim of vindictive sentence because claim could have been raised on direct appeal); McDonald v. State, 751 So. 2d 56, 58 (Fla. 2d DCA 1999) (same); *see also* Guzman v. McNeil, No. 09-23795-Civ-HUCK, 2011 WL 915130, at *8 (S.D. Fla. Feb. 15, 2011) (federal habeas petitioner's claim of vindictive sentencing was properly denied by state court on independent and adequate state ground of procedural bar, because claim could have and should have been raised on direct appeal), *Report and Recommendation Adopted by* 2011 WL 904834 (S.D. Fla. Mar. 14, 2011); Peadon v. Sec'y, Dep't of Corr., No. 8:10-cv-1409-T-17EAJ, 2010 WL 4941713, at *10 (M.D. Fla. Nov. 30, 2010) (same).

---

[14] As previously noted, the federal court must honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek, 62 F.3d at 1302; Alderman, 22 F.3d at 1541.

As previously discussed, to overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  Petitioner contends his failure to present his vindictive sentence claim on direct appeal was caused by ineffective assistance of appellate counsel (doc. 35 at 23).  Petitioner presented this claim of ineffective assistance of appellate counsel in his state habeas petition (Ex. O-1 at 31–33).  The First DCA denied the petition on the merits (Ex. O-2).

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the Strickland standard.  *See* Smith v. Robbins, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted).  The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  466 U.S. at 691.  Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal.  Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal.  *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel.  Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).  Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits.  Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984).  Moreover, the arguments omitted from the appeal must have been significant enough to have

affected the outcome of the appeal.  Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

In the instant case, Petitioner's claim of vindictive sentencing was not preserved in the trial court (*see* Ex. B at 242–74).  In light trial counsel's failure to preserve the issue for appellate review, appellate counsel's failure to raise it was not constitutionally deficient.  *See* Atkins, 965 F.2d at 957; Francois, 741 F.2d at 1285–86.

Petitioner failed to demonstrate he is entitled to a merits review of his claim through the "cause and prejudice" portal.  Further, he failed to proffer new, reliable evidence showing he is factually innocent of the crimes.  Therefore, he is not entitled to federal review of Ground Eight.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>10</u><sup>th</sup> day of September 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).